# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
)
SKY ANGEL U.S., LLC,                    )
)
              Plaintiff,          )
)
           v.                  )      Civil Action No. 1:12-cv-01834-RC
)
NATIONAL CABLE SATELLITE               )      Oral Argument Requested
CORPORATION d/b/a/ C-SPAN,             )
)
            Defendant.          )
_____)

## DEFENDANT'S MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT

Bruce D. Collins
Corporate VP & General Counsel
C-SPAN
400 North Capitol St., NW
Suite 650
Washington, DC 20001

Bruce D. Sokler
Robert G. Kidwell
MINTZ LEVIN COHN FERRIS
 GLOVSKY AND POPEO, PC
701 Pennsylvania Ave., NW
Suite 900
Washington, DC 20004
*Telephone* (202) 434-7300
*Facsimile* (202) 434-7400

*Counsel for Defendant*

January 14, 2013

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

BACKGROUND ...................................................................................................2

ARGUMENT ........................................................................................................6

I.    THIS COMPLAINT MAY NOT BE HEARD IN THIS COURT ....................................6

      A.    District Courts Generally Do Not Have Jurisdiction Where a Statute
            Provides for Agency Review and Vests Appellate Jurisdiction in the
            Court of Appeals ...............................................................................7

      B.    The Communications Act Vests the FCC With Exclusive Original
            Jurisdiction Over Sky Angel's Claims ...............................................8

      C.    The Complaint is Identical to a Matter Pending Before the FCC ..........10

      D.    Plaintiff Has Failed to Exhaust its Administrative Remedy .................12

II.   THE COMPLAINT IS FACIALLY INSUFFICIENT UNDER *TWOMBLY* ...................13

      A.    Plaintiff Asserts Legal Conclusions, Not Plausible Facts.....................14

            i.    Plaintiff Fails to Name Any Alleged Co-Conspirator or Allege
                  Any Facts to Overcome the Presumption that C-SPAN is a
                  Single Entity Incapable of Conspiring with Itself Under
                  *Copperweld* ...............................................................................16

            ii.   Plaintiff Fails to Allege Any Facts Plausibly Suggesting A
                  Group Boycott...............................................................................17

III.  THE COMPLAINT FAILS TO PLEAD THE REQUIRED MARKET
      POWER ELEMENTS OF A MONOPOLY CLAIM .........................................19

      A.    Plaintiff Fails to Allege a Valid Product Market ..................................20

      B.    Plaintiff Fails to Allege a Valid Geographic Market ............................23

      C.    Plaintiff Fails to Allege that C-SPAN has Market Power......................25

IV.   PLAINTIFF FAILS TO PLEAD ANTITRUST INJURY.................................................27

      A.    Plaintiff's Disappointment is the Result of Its Own Contract Breach ..........29

      B.    Plaintiff's Alleged Injury is Speculative and Not the Type of Injury
            that the Antitrust Laws Seek to Prevent...............................................30

CONCLUSION..................................................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

CASES[1]

*AFGE v. Loy*,
  281 F. Supp. 2d 59 (D.D.C. 2003) ........................................................................7

*Allen v. Dairy Farmers of Am., Inc.*,
  748 F. Supp. 2d 323 (D. Vt. 2010) ......................................................................26

*Am. Needle, Inc. v. NFL*,
  130 S. Ct. 2201 (2010) ........................................................................................16

*Apani SW, Inc. v. Coca-Cola Enter., Inc.*,
  300 F.3d 620 (5th Cir. 2002) ..............................................................................23

*Atl. Richfield Co. v. USA Petroleum Co.*,
  495 U.S. 328 (1990) ......................................................................................28, 29

*ASA Accugrade, Inc. v. Am. Numismatic Ass'n*,
  370 F. Supp. 2d 213 (D.D.C. 2005) ....................................................................16

*\*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................15

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
  472 U.S. 585 (1985) ............................................................................................29

*Bayer Schering Pharma AG v. Sandoz, Inc.*,
  813 F. Supp. 2d 569 (S.D.N.Y. 2011) ................................................................20

*\*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................... passim

*\*Brown Shoe Co. v. United States*,
  370 U.S. 294 (1962) ................................................................................20, 23, 28

*\*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
  429 U.S. 477 (1977) ............................................................................................28

*Burtch v. Milberg Factors, Inc.*,
  662 F. 3d 212 (3d Cir. 2011) ..............................................................................16

*C-SPAN et al. v. FCC*,
  545 F.3d 1051 (D.C. Cir. 2008) ..........................................................................26

---

[1] Cases upon which we chiefly rely are marked with an asterisk.

*Campfield v. State Farm Mut. Auto. Ins.,*
532 F.3d 111 (10th Cir. 2008) ...........................................................................20

*Cheeks of N. Am., Inc. v. Fort Myer Constr. Corp.,*
807 F. Supp. 2d 77 (D.D.C. 2011) ................................................................. passim

*CIBA Vision Corp. v. De Spirito,*
2010 U.S. Dist. LEXIS 11386 (N.D. Ga. Feb. 10, 2010) ......................................16

*City of Rochester v. Bond,*
603 F.2d 927 (D.C. Cir. 1979) ............................................................................7

*Cmty. Nutrition Inst. v. Novitch,*
583 F. Supp. 294 (D.D.C. 1984) ....................................................................7, 11

*Coalition for Underground Expansion v. Mineta*
333 F.3d 193 (D.C. Cir. 2003) ............................................................................6

*Conn. Ironworkers Emplrs. Assoc. v. New Eng. Reg'l Council of Carpenters,*
2012 U.S. Dist. LEXIS 37523 (D. Conn. Mar. 20, 2012) ......................................30

*Copperweld Corp. v. Independence Tube Corp.,*
467 U.S. 752 (1984) .....................................................................................16, 17

*Dicar, Inc. v. Stafford Corrugated Prods.,*
2010 U.S. Dist. LEXIS 23677 (D.N.J. 2010) .......................................................24

*Downeast Builders & Realty, Inc. v. Essex Homes Southeast, Inc.,*
2012 U.S. Dist. LEXIS 91764 (D.S.C. July 3, 2012) ...........................................22

*Estate of McDaniels v. Liberty Mut. Grp. Inc.,*
2012 U.S. Dist. LEXIS 124448 (D.D.C. Aug. 31, 2012) ...............................6, 8, 14

*FCC v. ITT World Commc'ns, Inc.,*
466 U.S. 463 (1984) ..........................................................................................11

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.,*
130 S. Ct. 3138 (2009) .......................................................................................7

*George Haug Co. v. Rolls Royce Motor Cars, Inc.,*
148 F.3d 136 (2d Cir. 1998) ..............................................................................30

*Heller, Ehrman, White & MacAuliffe v. Babbitt,*
992 F.2d 360 (D.C. Cir. 1993) ............................................................................9

*H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys.,*
879 F.2d 1005 (2d Cir. 1989) ............................................................................26

*In re Elevator Antitrust Litig. Transhorn, Ltd.,
    502 F. 3d 47 (2d Cir. 2007)....................................................................................17

In re Processed Egg Prods. Antitrust Litig.,
    821 F. Supp. 2d 709 (E.D. Pa. 2011) ...................................................................17

In re Set-Top Cable TV Box Antitrust Litig.,
    2011 U.S. Dist. LEXIS 39001 (S.D.N.Y. Apr. 8, 2011)........................................25

In re: Sky Angel U.S., LLC,
    2012 U.S. App. LEXIS 14328 (D.C. Cir. 2012) .....................................................5

Jacobs v. Tempur-Pedic Int'l, Inc.,
    626 F.3d 1327 (11th Cir. 2010) ......................................................................22, 31

Jerome Stevens Pharm., Inc. v. Food & Drug Admin.,
    402 F.3d 1249 (D.C. Cir. 2005)................................................................................6

Jones v. Horne,
    634 F.3d 588 (D.C. Cir. 2011) ...............................................................................15

Kay v. FCC,
    884 F. Supp. 1 (D.D.C. 1995)................................................................................12

Khadr v. United States,
    529 F.3d 1112 (D.C. Cir. 2008) ...............................................................................6

Kowal v. MCI Commc'ns Corp.,
    16 F.3d 1271 (D.C. Cir. 1994)................................................................................14

Lady Deborah's, Inc. v. VT Griffin Servs., Inc.,
    No. 207-079, 2007 U.S. Dist. LEXIS 95138 (S.D. Ga. Oct. 26, 2007) .................20

Loren Data Corp. v. GXS, Inc.,
    2011 U.S. Dist. LEXIS 88222 (D. Md. Aug. 9, 2011) ...........................................16

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992)................................................................................................28

McManus v. District of Columbia,
    530 F. Supp. 2d 46 (D.D.C. 2007) ...........................................................................9

Meijer, Inc. v. Biovail Corp.,
    533 F.3d 857 (D.C. Cir. 2008 ..................................................................................2

Myers v. Bethlehem Shipbldg. Corp.,
    303 U.S. 41 (1938)....................................................................................................7

*Nat'l Cable Television Coop., Inc. v. Lafayette,
   2010 U.S. Dist. LEXIS 124387 (D. Kan. Nov. 23, 2010) .................................................. 8-10

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.,
   129 S. Ct. 1109 (2009) ..................................................................................................13, 29

Parisi v. Sinclair,
   845 F. Supp. 2d 215 (D.D.C. 2012) .......................................................................................2

Rogers v. Ink,
   766 F.2d 430 (10th Cir. 1985) ...............................................................................................9

Queen City Pizza, Inc. v. Domino's Pizza, Inc.,
   124 F.3d 430 (3d Cir. 1997) .................................................................................................20

RxUSA Wholesale, Inc. v. Alcon Labs., Inc.,
   661 F. Supp. 2d 218 (E.D.N.Y. 2009) .................................................................................26

*Sandwich Isles Commc'ns, Inc. v. Nat'l Exch. Carrier Ass'n,
   799 F. Supp. 2d 44 (D.D.C. 2011) .............................................................................. 6, 10-12

Smith v. United States,
   561 F.3d 1090 (10th Cir. 1990) .............................................................................................2

Smugglers Notch Homeowners Ass'n, Inc. v. Smugglers' Notch Mgmt. Co., Ltd.,
   414 Fed. Appx. 372 (2d Cir. 2011) .................................................................................22, 25

Southern Pac. Commc'ns Co. v. Am. Tel. & Tel. Co.,
   740 F.2d 980 (D.C. Cir. 1984) .............................................................................................25

Sprint Nextel Corp. v. AT&T Inc.,
   821 F. Supp. 2d 308 (D.D.C. 2011) .....................................................................................28

Synthes, Inc. v. Emerge Med., Inc.
   2012 U.S. Dist. LEXIS 140251 (E.D. Pa. Sept. 28, 2012) ...................................................23

Tal v. Hogan,
   453 F.3d 1244 (10th Cir. 2006) .............................................................................................2

*Telecomms. Research & Action Ctr. v. FCC,
   750 F.2d 70 (D.C. Cir. 1984) ...........................................................................................7, 10

United States v. Comcast Corp., et al.,
   Competitive Impact Statement, Dkt. No. 1:11-cv-00106 .....................................................25

United States v. E.I. du Pont de Nemours & Co.,
   351 U.S. 377 (1956) .............................................................................................................20

*United States v. Grinnell Corp.,*
  384 U.S. 563 (1966) ........................................................................25

*Uretek USA, Inc. v. Applied Polymerics, Inc.,*
  2011 U.S. Dist. LEXIS 139349 (E.D. Va. Dec. 5, 2011) ........................23

*\*Verizon Commc'ns v. Law Offices of Curtis V. Trinko,*
  540 U.S. 398 (2004) ................................................................13, 30

*Walgreen Co. v. AstraZeneca Pharm. L.P.,*
  534 F. Supp. 2d 146 (D.D.C. 2008) .....................................28, 29

*Wampler v. SW Bell Tel. Co.,*
  597 F.3d 741 (5th Cir. 2010) ...............................................23, 26

*Wright v. Foreign Serv. Grievance Bd.,*
  503 F. Supp. 2d 163 (D.D.C. 2007) ...............................................7

*Zulauf v. Kentucky Educ. TV,*
  28 F. Supp. 2d 1022 (E.D. Ky. 1998) ...........................................9

## STATUTES

47 U.S.C. § 522(13) ........................................................................3

47 U.S.C. § 548 ................................................................... passim

## OTHER AUTHORITIES

*Implementation of Section 628 of the Cable Television Consumer Protection and
  Competition Act of 1992,* Report and Order, 13 FCC Rcd 15822 (1998) ...............31

*In the Matter of Adelphia Commc'ns & Time Warner Cable,*
  Memorandum Opinion and Order, 21 FCC Rcd 8203 (2006) .................................25

*In the Matter of Sky Angel U.S., LLC, Emergency Petition for Standstill,*
  Order, 25 FCC Rcd 3879 (2010) ................................................. passim

Public Notice, *Media Bureau Seeks Comment on Interpretation of the Terms
  "Multichannel Video Programming Distributor" and "Channel" as Raised in
  Pending Program Access Proceeding,* MB Docket No. 12-83, DA 12-507 (rel. Mar.
  30, 2012) ........................................................................4

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| SKY ANGEL U.S., LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:12-cv-01834-RC |
| | ) | |
| NATIONAL CABLE SATELLITE | ) | Oral Argument Requested |
| CORPORATION d/b/a/ C-SPAN, | ) | |
| | ) | |
| Defendant. | ) | |

_____

## DEFENDANT'S MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT

Defendant National Cable Satellite Corporation d/b/a C-SPAN ("C-SPAN" or "Defendant"), pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), hereby requests that the Complaint in the above-captioned action be dismissed with prejudice for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

The Federal Communications Commission ("FCC") has exclusive original jurisdiction over Plaintiff's claims against C-SPAN. Section 628 of the Communications Act, codified at 47 U.S.C. § 548, assigns to the FCC the task of handling program access complaints of this sort involving multichannel video programming distributors ("MVPDs") because of its special expertise in communications issues. This regulatory scheme provides that a plaintiff may file a complaint with the FCC and appeal to the court of appeals when dissatisfied with an FCC determination. Nowhere, however, does the statute allow for district court review of these issues. Plaintiff Sky Angel U.S., LLC ("Sky Angel" or "Plaintiff"), dissatisfied with the FCC's speed in rendering a decision on the merits of its Communications Act complaint in a proceeding

1

before the agency, is improperly seeking to preempt the FCC's resolution of those claims.  This

Court, therefore, lacks subject matter jurisdiction and cannot resolve this Complaint without

intruding into the FCC's exclusive domain.  The Complaint should be dismissed for lack of

subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

Even if jurisdiction were proper in this Court, Sky Angel has failed to adequately contort

its Section 628 claim into a properly pleaded antitrust claim.  Sky Angel's Complaint pleads

legal conclusions instead of plausible facts, fails to plead any of the elements of an antitrust

claim, and fails to allege an actual antitrust injury.  Its theory of the case is simple, unadorned

speculation.  The Complaint therefore must be dismissed under Rule 12(b)(6) for failure to state

a claim under which relief could be granted.

## BACKGROUND[2]

This Complaint attempts an end-run around a congressionally established regulatory

scheme — a fact recognized by Sky Angel, who recites in its Complaint that it has a nearly

identical claim against Discovery Communications, LLC and its affiliate, Animal Planet, L.L.C.

---

[2] Because the Complaint relies upon or refers to various documents, including from Sky Angel's pending suit against Discovery Communications at the FCC, this Court can consider those materials in ruling upon this Motion to Dismiss.  *See, e.g., Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 1990) (in deciding a 12(b)(6) motion, a court may consider exhibits and documents incorporated into the complaint by reference); *Parisi v. Sinclair*, 845 F. Supp. 2d 215, 217 (D.D.C. 2012) (explaining that when considering a 12(b)(6) motion to dismiss the court may consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice.").  Even had the Plaintiff not incorporated those materials into the Complaint, this Court can consider matters of public record such as the FCC's orders and reports cited herein, other orders, and materials embraced by the complaint under Fed. R. Civ. P. 12(b)(6).  *See, e.g., Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 867 n.* (D.C. Cir. 2008) (following "[n]umerous cases" that "have allowed consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned" when considering a Rule 12(b)(6) motion); *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).  Courtesy copies of certain agency documents cited are attached.

(collectively, "Discovery") currently pending before the FCC.  In its FCC complaint, as here, Sky Angel accuses Discovery of discrimination and unfairly terminating its agreement for carriage of Discovery Channel and other networks.  There as here, Discovery states that it terminated its agreement with Sky Angel after Sky Angel began streaming its programming over the Internet.  There as here, Sky Angel claims that its termination for breach was actually a malicious conspiracy to benefit the MVPD investors in Discovery.

A multichannel video programming distributor, or MVPD, is "a person such as… a cable operator, a multichannel multipoint distribution service, a direct broadcast satellite service, or a television receive-only satellite program distributor, who makes available for purchase, by subscribers or customers, multiple channels of video programming[.]"  47 U.S.C. § 522(13).  Commonly known MVPDs include cable companies such as Comcast, Cox Communications, and Time Warner Cable, satellite companies such as DirecTV and DISH Network, and telephone companies such as Verizon and AT&T (in those markets where they provide video service).

Plaintiff describes its service as "a real-time, multichannel video distribution system[.]"  Compl. ¶ 8.  Importantly, unlike any cable or satellite provider, Sky Angel provides this programming to its customers over the Internet, rather than over any facilities of its own.  *In the Matter of Sky Angel U.S., LLC, Emergency Petition for Standstill*, Order, 25 FCC Rcd 3879, ¶ 2 (2010) ("*FCC Order on Sky Angel Standstill Petition*") (attached hereto as Ex. A).

Sky Angel entered into an affiliation agreement authorizing it to carry C-SPAN, subject to terms and conditions, on May 28, 2009, and C-SPAN "went live" on Sky Angel on July 10, 2009.  Compl. ¶¶ 32 – 33 and Ex. E.  Sky Angel had previously entered into a similar agreement with Discovery, subject to similar terms and conditions.  *FCC Order on Sky Angel Standstill Petition* ¶ 3.  Three days later, on July 13, 2009, C-SPAN notified Sky Angel that its distribution

of C-SPAN over the public Internet was a material breach of its carriage terms, and the agreement was terminated.  Compl. ¶ 33.

Approximately six months later, Discovery separately notified Sky Angel that its distribution of Discovery Channel and other networks over the public Internet was a material breach of its carriage terms, and the agreement was terminated.  *FCC Order on Sky Angel Standstill Petition* ¶ 4.  On March 24, 2010, Sky Angel filed a program access complaint against Discovery at the FCC, as well as a petition for standstill of their affiliation agreement, alleging that it would incur irreparable harm if denied Discovery's programming.  *Id*.

On April 21, 2010, the FCC denied Sky Angel's petition requesting a temporary standstill of its affiliation agreement with Discovery, finding that Sky Angel failed to demonstrate a likelihood of success on the merits because it is not clearly an MVPD entitled to seek relief under the program access rules.  *Id.* ¶¶ 6 – 9.  The FCC stated that its decision "should not be read to state or imply that the Commission…will ultimately conclude…that Sky Angel does not meet the definition of an MVPD."  *Id.* ¶ 10.

On March 30, 2012, facing the novel legal question of whether a company such as Sky Angel that distributes programming over the public Internet could qualify as an MVPD under the Communications Act and therefore avail itself of the program access dispute resolution process codified in Section 628 of that Act, the FCC issued a Public Notice requesting comment on the definition of "multichannel video programming distributor" and "channel" to assist in its resolution of the pending Sky Angel complaint against Discovery.  Public Notice, *Media Bureau Seeks Comment on Interpretation of the Terms "Multichannel Video Programming Distributor" and "Channel" as Raised in Pending Program Access Proceeding*, MB Docket No. 12-83, DA 12-507 (rel. Mar. 30, 2012) ("FCC Pub. Notice") (attached hereto as Ex. B).  In the Notice, the

FCC recognized that the regulatory classification of Sky Angel's service involves far-reaching legal and policy issues. *Id.* ¶ 1. For instance, the definition of MVPD could affect not only Sky Angel, but also other Internet content providers such as Netflix and Hulu Plus. *Id.* ¶¶ 1, 8. Accordingly, the FCC wished to ensure that it would benefit from both its own expertise and broad public input in resolving this question.

Sky Angel has been dissatisfied with the pace of the FCC's consideration of its request to be classified as an MVPD entitled to avail itself of the process codified in Section 628. Most recently, Sky Angel sought a writ of mandamus from the D.C. Circuit to force the FCC's hand in resolving this regulatory question in the context of its dispute with Discovery. On July 12, 2012, the D.C. Circuit denied Sky Angel's Petition for Writ of Mandamus. *In re: Sky Angel U.S., LLC*, 2012 U.S. App. LEXIS 14328 (D.C. Cir. 2012).

Four months later, Sky Angel filed this lawsuit against C-SPAN on the same theory as its pending FCC complaint against Discovery.

Sky Angel's allegations against C-SPAN are virtually identical to its allegations against Discovery. In both matters, Sky Angel alleges that the defendant's termination of its agreement due to Sky Angel's distribution over the public Internet was unfair. *Compare FCC Order on Sky Angel Standstill Petition* ¶ 4, *with* Compl. ¶¶ 32 – 33, 35. In both matters, Sky Angel complains that it never received what it believes is a satisfactory explanation of why it was terminated. *Compare FCC Order on Sky Angel Standstill Petition* ¶ 4, *with* Compl. ¶ 35. While Sky Angel's FCC complaint against Discovery was brought under Section 628, and not under the antitrust laws, its allegation against Discovery is the same as its allegation against C-SPAN: it claims that Discovery's actions were intended to hinder Sky Angel's ability to effectively compete in the marketplace because Sky Angel allegedly competes with some of the cable companies that invest

in Discovery.  *Compare FCC Order on Sky Angel Standstill Petition* ¶ 4, *with* Compl. ¶ 51.

Finally, as it does in this case, Sky Angel alleges that absent Discovery's programming, it would

suffer irreparable harm and that the public interest would be served by Sky Angel's continued

Discovery carriage.  *Compare FCC Order on Sky Angel Standstill Petition* ¶ 4, *with* Compl. ¶ 63.

## ARGUMENT

## I.    THIS COMPLAINT MAY NOT BE HEARD IN THIS COURT

In the face of a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction,

Sky Angel bears the burden of demonstrating that jurisdiction exists.  *Estate of McDaniels v.*

*Liberty Mut. Grp. Inc.*, 2012 U.S. Dist. LEXIS 124448, at *7 (D.D.C. Aug. 31, 2012) (dismissing

claims for lack of subject matter jurisdiction because agency has primary jurisdiction over tort

claims against a workers' compensation insurer for failure to timely pay benefits) (citing *Khadr*

*v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008)).  To determine whether jurisdiction

exists, the court may "consider the complaint supplemented by undisputed facts evidenced in the

record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed

facts."  *Cheeks of N. Am., Inc. v. Fort Myer Constr. Corp.*, 807 F. Supp. 2d 77, 90 (D.D.C. 2011)

(citing *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) and

*Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005)

("[T]he district court may consider materials outside the pleadings in deciding whether to grant a

motion to dismiss for lack of jurisdiction.") and dismissing complaint for lack of standing

because plaintiff failed to demonstrate antitrust injury).  Courts are not limited to the pleadings to

resolve a motion to dismiss pursuant to 12(b)(1).  *Sandwich Isles Commc'ns, Inc. v. Nat'l Exch.*

*Carrier Ass'n,* 799 F. Supp. 2d 44, 48-49 (D.D.C. 2011) (dismissing case because of matter

pending before FCC).  A plaintiff's factual allegations "will bear closer scrutiny" in the face of a

12(b)(1) motion than a 12(b)(6) motion.  *Cheeks of N. Am., Inc.*, 807 F. Supp. 2d at 91 (quoting

*Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007)).

    The claims in Sky Angel's Complaint fall wholly within the exclusive jurisdiction of the

FCC, subject to review by the court of appeals.  This fact alone is an independent and sufficient

basis to dismiss the Complaint with prejudice.

    **A.**    **District Courts Generally Do Not Have Jurisdiction Where a Statute
Provides for Agency Review and Vests Appellate Jurisdiction in the
Court of Appeals**

    "The federal courts are courts of limited jurisdiction, and they lack the power to presume

the existence of jurisdiction in order to dispose of a case on any other grounds."  *Telecomms.*

*Research & Action Ctr. v. FCC*, 750 F.2d 70, 75 (D.C. Cir. 1984) (denying writ of mandamus).

A district court lacks subject matter jurisdiction where an agency is charged by statute with

resolving disputes subject to review by the court of appeals; that jurisdictional exclusivity need

not be explicitly stated.[3]  *See Myers v. Bethlehem Shipbldg. Corp.*, 303 U.S. 41, 47-49 (1938)

(considering the National Labor Relations Act); *Telecomms. Research & Action Ctr.*, 750 F.2d at

75; *Cmty. Nutrition Inst. v. Novitch*, 583 F. Supp. 294, 296 (D.D.C. 1984) ("if there exists a

special statutory review procedure, it is ordinarily supposed that Congress intended that

procedure to be the exclusive means of obtaining judicial review in those cases in which it

applies.") (citing *City of Rochester v. Bond*, 603 F.2d 927 (D.C. Cir. 1979)).  Moreover, the

---

[3] Courts have allowed district court review of issues related to matters over which an agency has
statutory authority only in very narrow circumstances that are not applicable to the present case.
Specifically, the courts have allowed review where the issues did not relate to the agency's area
of expertise.  *See, e.g., Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 130 S. Ct. 3138
(2009) (finding that district court review was not precluded by the statutory scheme because
agency expertise was not necessary); *AFGE v. Loy*, 281 F. Supp. 2d 59, 64 (D.D.C. 2003)
(dismissing a statutory claim against the Federal Labor Relations Authority for lack of subject
matter jurisdiction, but considering a constitutional claim, which was subsequently dismissed for
failure to state a claim, because they were "wholly collateral to the statute's review provisions
and outside the agency's expertise.").

agency's jurisdiction over the issue need not be clear; it is sufficient that there is a "substantial question" as to whether the statute applies. *Estate of McDaniels*, 2012 U.S. Dist. LEXIS 124448, at *7 (dismissing claims for lack of subject matter jurisdiction because agency has primary jurisdiction over tort claims against a workers' compensation insurer for failure to timely pay benefits).

> **B.**     **The Communications Act Vests the FCC With Exclusive Original Jurisdiction Over Sky Angel's Claims**

Section 628 of the Communications Act precludes district court review of the claims brought by Sky Angel against both C-SPAN and Discovery arising from the termination of their program carriage agreements. *Nat'l Cable Television Coop., Inc. v. Lafayette*, 2010 U.S. Dist. LEXIS 124387, at *24 (D. Kan. Nov. 23, 2010) ("the FCC has exclusive original jurisdiction" over Section 628 claims). Addressing precisely this issue, the court in *Nat'l Cable Television Coop.* held that since Congress had demonstrated a "fairly discernible" intent to limit jurisdiction over cable carriage disputes to the FCC, adjudication by a district court is precluded. *Id*. The FCC possesses relevant expertise and Section 628(d), which states that an aggrieved party may bring a complaint to the FCC, was specifically crafted to ensure deference to that expertise and avoid wasting judicial resources. *Id*. ("allowing the district court to decide Section 628(b) claims concurrently with the FCC would create unnecessarily duplicative litigation, and would substantially decrease the effectiveness of the statutory design by undermining congressional intent to bring FCC expertise to bear on these issues.") (internal quotations and citations omitted). The fact that Section 628 states that one "may" – rather than "must" – commence an adjudicatory proceeding at the Commission does not change the fact that the FCC enjoys exclusive jurisdiction. *Id*. at *26-27 (explaining that Congress expressly provided for district court review over only particular issues in other places in the statute which "stand in stark

contrast to Section 628(d) and indicate that if Congress intended for district courts to share jurisdiction over Section 628 claims, it knew how to make such a jurisdictional grant clear.").

Sky Angel may not circumvent the exclusive jurisdiction of the FCC and the courts of appeal by reframing its program access claim as an antitrust count rather than a Section 628 count. *Heller, Ehrman, White & MacAuliffe v. Babbitt*, 992 F.2d 360, 363 (D.C. Cir. 1993) (Plaintiffs "may not, by creatively framing their complaint, circumvent a congressional grant of exclusive jurisdiction."); *see also McManus v. District of Columbia*, 530 F. Supp. 2d 46, 78 (D.D.C. 2007) ("where PERB has jurisdiction over a claim, a litigant cannot bypass PERB's jurisdiction by bringing the same action as a common law claim.  As a result, the District of Columbia courts have rejected plaintiffs' efforts to avoid PERB's exclusive jurisdiction by resorting to artful pleading."); *Nat'l Cable Television Coop., Inc.*, 2010 U.S. Dist. LEXIS 124387, at *31 (citing *Rogers v. Ink*, 766 F.2d 430, 434 (10th Cir. 1985) ("Plaintiff may not circumvent the exclusive jurisdiction of the FCC and the courts of appeal by framing a complaint in district court as one for injunctive, declaratory or mandatory relief."); *Zulauf v. Kentucky Educ. TV*, 28 F. Supp. 2d 1022, 1024 (E.D. Ky. 1998) (granting defendants' motion to dismiss allegations that lack of accessibility through closed captioning violated the Rehabilitation Act and the Americans with Disabilities Act  ("ADA") because the court lacked subject matter jurisdiction where plaintiff failed to exhaust his remedies under the Video Programming Accessibility ("VPA") Act, explaining that "[i]f the Court ruled any other way then [the VPA Act]…would be rendered meaningless because every plaintiff would circumvent [the Act's requirements] by suing under the ADA").  Sky Angel's claims arising from C-SPAN's termination of its carriage agreement cannot be heard in this Court, no matter how they are styled.

### C.      The Complaint is Identical to a Matter Pending Before the FCC

Sky Angel's Complaint asks this Court to leap ahead of the FCC's pending proceeding and decide that Sky Angel is an MVPD—the precise legal question at issue in Sky Angel's complaint against Discovery at the FCC.[4]  Sky Angel's antitrust claims cannot be heard unless the Court makes that leap (and also ignores the other pleading deficiencies in the Complaint). But matters pending before the FCC are not reviewable by any court.  *Sandwich Isles Commc'ns, Inc.*, 799 F. Supp. 2d at 49 ("a petition for judicial review filed during the pendency of a request for agency reconsideration will be dismissed for lack of jurisdiction.").  This holds true even if the matters do not include all the same parties and claims if, "in substance, [plaintiff] seeks the same relief on the same issues."  *Id.* (finding unpersuasive plaintiffs' arguments that the case at hand was different from the pending FCC proceeding because it raised different claims and included new parties and dismissing for lack of subject matter jurisdiction).  Litigants may not "resort to district court to preempt an agency order that another court would have exclusive jurisdiction to review."  *Nat'l Cable Television Coop., Inc.*, 2010 U.S. Dist. LEXIS 124387, at *15; *see also Telecomms. Research & Action Ctr.*, 750 F.2d at 77 ("It is well settled that even where Congress has not expressly stated that statutory jurisdiction is 'exclusive'… a statute which vests jurisdiction in a particular court cuts off original jurisdiction in other courts in all cases covered by that statute.").  Thus, because Plaintiff's complaint against Discovery dealing with the same issues is still pending before the FCC, it may not be heard by this Court.

---

[4] Conversely, the same reasoning would apply if Sky Angel were asking this Court to determine that it *is not* an MVPD, and therefore *not* subject to Section 628.  The determination of whether or not Sky Angel is an MVPD is a decision reserved exclusively for the FCC, with exclusive review by the court of appeals.

Once the FCC has rendered a decision in the Discovery case, then Plaintiff may appeal to the court of appeals.[5]  The court of appeals has exclusive jurisdiction to review FCC determinations.  *See, e.g., FCC v. ITT World Commc'ns, Inc.*, 466 U.S. 463, 468 (1984) ("We consider initially the jurisdiction of the District Court to enjoin FCC action as ultra vires. Exclusive jurisdiction for review of final FCC orders, such as the FCC's denial of respondents' rulemaking petition, lies in the Court of Appeals."); *Sandwich Isles Commc'ns, Inc.*, 799 F. Supp. 2d at 49 (district courts do not have jurisdiction to review final FCC orders); *Cmty. Nutrition Inst.*, 583 F. Supp. at 296 (dismissing case for lack of subject matter jurisdiction where the statute provided that an agency decision may be appealed to the court of appeals and explaining that "[t]he United States Court of Appeals for this circuit has repeatedly held when interpreting similarly crafted statutes that jurisdiction is exclusive, and that jurisdiction does not lie in the district court.") (internal citations omitted).

Plaintiff is free to file its complaint against C-SPAN at the FCC alongside its complaint against Discovery, but in any case it must await the FCC's decision on its proper regulatory classification, and then upon its entitlement to relief, and then may seek review in the court of appeals if it is not satisfied with the outcome.  *ITT World Commc'ns, Inc.*, 466 U.S. at 468 ("Litigants may not… [ask] the District Court to enjoin action that is the outcome of the agency's order.  Yet that is what respondents have sought to do in this case… [T]he complaint filed in the District Court raised the same issues and sought to enforce the same restrictions upon agency conduct as did the petition for rulemaking that was denied by the FCC.  The appropriate procedure for obtaining judicial review of the agency's disposition of these issues was appeal to

---

[5] The same holds true if, as Plaintiff alleges, the FCC has already rendered a decision.  Compl. ¶ 58.  Plaintiff must still bring its appeal to the court of appeals rather than attempt to dress up the same issues as a Sherman Act claim and pursue it in district court.  *See supra Section I.B.*

the court of appeals as provided by statute."); *Sandwich Isles Commc'ns, Inc.*, 799 F. Supp. 2d at 49 (dismissing a complaint because of a matter pending before FCC and explaining that plaintiffs cannot call upon the district court to ignore or set aside an agency ruling that it is not authorized to review).

### D.   Plaintiff Has Failed to Exhaust its Administrative Remedy

Even if jurisdiction were proper in this Court, it could not hear Sky Angel's Complaint because Sky Angel has not yet exhausted its administrative remedies.  *Kay v. FCC*, 884 F. Supp. 1, 1 (D.D.C. 1995).  Plaintiff's assertion that it "has no regulatory remedy" is a false legal conclusion that is not entitled to deference.  Plaintiff bases its allegation that it lacks a regulatory remedy on the fact that the FCC has not yet rendered a final decision in the *Discovery* matter. *See* Compl. ¶ 58.  This fact alone demonstrates that Plaintiff in fact has a regulatory remedy, and that it is merely dissatisfied with the speed at which the FCC is handling the issue.  Plaintiff alleges that "[a]t all times prior to the filing of this complaint the FCC has declined to apply the provisions of the 1992 Cable Act to Sky Angel despite Sky Angel's request that it do so… To date the FCC has declined to regard Sky Angel as an MVPD entitled to seek relief under the program access rules… [and] does not intend to adjudicate" the complaint.  *Id*.  In short, as Plaintiff alleges, the FCC has *not yet* applied Section 628 to Sky Angel.  That the FCC has *not yet* applied Section 628 does not mean that it will not apply these rules.  This question is currently pending in an open FCC proceeding.

A review of the administrative record similarly reveals that Plaintiff's allegation that it has no administrative remedy is false.  While the FCC denied Plaintiff's standstill petition in the pending case, finding that it was *unlikely* to succeed on the merits as an MVPD, the opinion explicitly stated that Plaintiff's complaint is still under consideration and that its denial should

not be construed as a final agency determination that Plaintiff is not an MVPD.  *FCC Order on Sky Angel Standstill Petition* ¶¶ 9, 10.  Moreover, the FCC has issued a request for public comment on the definitions of "MVPD" and "channel," as used in the program access rules, to assist in its resolution of Sky Angel's complaint, thereby acknowledging its importance and broad legal and policy implications beyond just the parties in that particular matter.  FCC Pub. Notice ¶ 1.  Accordingly, the FCC has not left Plaintiff without a regulatory remedy, and is in the process of reviewing Plaintiff's claim to ensure that it reaches the right conclusion.

## II.      THE COMPLAINT IS FACIALLY INSUFFICIENT UNDER *TWOMBLY*

Even if jurisdiction were proper in this Court, Sky Angel has failed to adequately contort its Section 628 claim into a properly pleaded antitrust claim.  Absent the program access requirements of Section 628 of the Communications Act, C-SPAN has no duty to allow Sky Angel to distribute its content absent very rare circumstances.  "As a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing."  *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 129 S. Ct. 1109, 1118 (2009); *see also Verizon Commc'ns v. Law Offices of Curtis V. Trinko*, 540 U.S. 398, 408 (2004) ("as a general matter, the Sherman Act does not restrict the long recognized right of a trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal.").

There are no non-imaginary facts in the Complaint that suggest this case is one of the very rare exceptions to this rule.  This fact alone provides a second independent and sufficient basis to dismiss the Complaint with prejudice.

### A.    Plaintiff Asserts Legal Conclusions, Not Plausible Facts

The only concrete facts that Sky Angel pleads in its Complaint tell the story of an ordinary contract dispute: the parties entered into an agreement that expressly prohibited distribution of C-SPAN over the Internet; Sky Angel began distributing C-SPAN over the Internet; three days after discovering this, C-SPAN terminated the agreement.

Conversely, the Complaint pleads no facts whatsoever that suggest an improper motivation on the part of C-SPAN, much less an industry-wide conspiracy. Sky Angel simply recites that a majority of the members of C-SPAN's Board of Directors are employees of cable companies, and then asks the Court to imagine a world where those cable companies conspired to drive Sky Angel out of business through anticompetitive means. There is no basis for this Court to join in Sky Angel's speculation.

The genesis of Sky Angel's case is summarized in a single sentence in paragraph 35 of its Complaint: Sky Angel's CEO, Rob Johnson, has "speculated" that C-SPAN terminated its agreement with Sky Angel because C-SPAN's Board of Directors "is composed of predominantly cable executives." That speculation is the beginning and the end of Sky Angel's factual basis for its claims, and it is insufficient to survive a motion to dismiss.

Where, as here, "nothing contained in the complaint invests either the action or inaction alleged with a plausible suggestion of conspiracy," the antitrust complaint must be dismissed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566 (2007). "[A] bare assertion of conspiracy will not suffice." *Id.* at 556. In deciding a motion to dismiss under Rule 12(b)(6), "[t]he court need not accept inferences drawn by plaintiff[ ] if such inferences are unsupported by the facts set out in the complaint." *Estate of McDaniels*, 2012 U.S. Dist. LEXIS 124448, at *6 (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). A plaintiff's legal conclusions are

not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

"To survive a motion to dismiss, the pleadings must suggest a plausible scenario that shows that the pleader is entitled to relief." *Jones v. Horne*, 634 F.3d 588, 595 (D.C. Cir. 2011) (citing *Twombly*, 550 U.S. at 570). Plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. "[N]aked assertion[s] devoid of further factual enhancement[]" will not suffice. *Cheeks of N. Am., Inc.*, 807 F. Supp. 2d at 91 (quoting *Iqbal*, 556 U.S. at 678). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This requires a plaintiff to demonstrate more than just a "sheer possibility" that defendant acted unlawfully. *Iqbal*, 556 U.S. at 678. "When a complaint's well-pleaded facts do not enable a court, drawing on its judicial experience and common sense, to infer more than the mere possibility of misconduct, the complaint has not shown that the pleader is entitled to relief." *Cheeks of N. Am., Inc.*, 807 F. Supp. 2d at 91 (internal quotations and citations omitted).

Here, Sky Angel's assertion that C-SPAN is engaged in an unlawful antitrust conspiracy is a legal conclusion that is not entitled to a presumption of truth. Sky Angel has failed to plead any facts, as required by *Twombly* and its progeny, to plausibly suggest that C-SPAN did anything other than terminate its agreement for a clear, material breach, and Sky Angel's claims should therefore be dismissed under Rule 12(b)(6).

### i.      Plaintiff Fails to Name Any Alleged Co-Conspirator or Allege Any Facts to Overcome the Presumption that C-SPAN is a Single Entity Incapable of Conspiring with Itself Under *Copperweld*

In order to plead a Section 1 violation, a plaintiff must allege "(1) that defendants entered into some agreement for concerted activity (2) that either did or was intended to unreasonably restrict trade in the relevant market, which (3) affects interstate commerce." *ASA Accugrade, Inc. v. Am. Numismatic Ass'n*, 370 F. Supp. 2d 213, 215 (D.D.C. 2005). The *sine qua non* of a Section 1 violation is the involvement of multiple parties. *See Loren Data Corp. v. GXS, Inc.*, 2011 U.S. Dist. LEXIS 88222 (D. Md. Aug. 9, 2011) (dismissal for failure to plead with whom defendant allegedly engaged in the boycott); *see also CIBA Vision Corp. v. De Spirito*, 2010 U.S. Dist. LEXIS 11386, at *19-20 (N.D. Ga. Feb. 10, 2010) (dismissing claim where plaintiff failed to allege, among other things, with whom the defendant was in a conspiracy).

In *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984), the Supreme Court held that a single entity is incapable of conspiring with itself. "[O]fficers or employees of the same firm do not provide the plurality of actors imperative for a Section 1 conspiracy[.]" *Id.* at 769. "Unilateral action, regardless of the motivation, is not a violation of Section 1." *Burtch v. Milberg Factors, Inc.,* 662 F. 3d 212, 221 (3d Cir. 2011) (affirming dismissal of plaintiff's complaint in part because they failed to point to any particular individuals who took part in the alleged agreement). But here there is only one Defendant—C-SPAN—and no named co-

conspirator.[6]  The Complaint therefore does not plead a conspiracy, and its conspiracy and

boycott claims must be dismissed.

> ### ii.    Plaintiff Fails to Allege Any Facts Plausibly Suggesting A Group Boycott

If Plaintiff is attempting to allege that particular members of C-SPAN's Board of

Directors are the conspiring parties (which, as described above, would not be cognizable under

*Copperweld*), then the Complaint's mere reference to "[t]he authorized majority of C-SPAN's

Board of Directors" is inadequate to identify who was allegedly a part of the conspiracy and who

was not.  *In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 745 (E.D. Pa. 2011)

(dismissing conspiracy claims alleged against two defendants as a result of plaintiff's failure to

plead facts specifically tying them to the alleged conduct).  Plaintiff must allege specific facts

against specific entities.  *In re Elevator Antitrust Litig. Transhorn, Ltd.*, 502 F. 3d 47, 51 (2d Cir.

2007) (finding that general allegations of conspiracy "without any specification of any particular

activities by any particular defendant" is insufficient to allege a Section 1 claim).

Simply reciting, as the Complaint does, that several cable companies' representatives are

on C-SPAN's Board, and then suggesting that they *could have* conspired to prevent Sky Angel

from posing a competitive threat, does no more than provide a "conclusory allegation[] of

agreement" which is insufficient to adequately plead a conspiracy.  *Id.*  A complaint cannot

---

[6] This is not a case where multiple competing sellers have formed a joint venture to administer the sales of their respective products, as in *Am. Needle, Inc. v. NFL*, 130 S. Ct. 2201, 2212 (2010). There is no allegation in the Complaint that the cable companies who have employees on C-SPAN's Board of Directors would have sold the programming that appears on C-SPAN to Sky Angel independently if C-SPAN did not exist.  To the contrary, no entity in the United States other than C-SPAN produces the unique type of congressional coverage and public affairs programming that appears on the C-SPAN networks.  Unlike the football teams in *American Needle* that had previously licensed their products individually and would continue to do so absent the joint venture, were it not for C-SPAN, this programming would not be available at all.

merely allege "general terms without any specification of any particular activities by any particular defendant[.]"  *Id.* at 50.

In *Twombly,* the Supreme Court held that allegations of conspiracy nearly identical to Sky Angel's were legally insufficient because they failed to demonstrate that the conspiracy was any more likely to be true than it was to be untrue.  550 U.S. at 554.  Plaintiffs in *Twombly* based their conspiracy claim on defendants' parallel conduct, "common motivation to thwart…competitive efforts[,]" and "common failure meaningfully to pursue attractive business opportunities[.]"  *Id*. at 551 (internal quotations omitted) and *cf.* Compl. ¶¶ 39 – 41, 47.  Accordingly, Sky Angel, like the plaintiffs in *Twombly*, has failed to provide any allegations that move the Complaint's allegations "across the line from conceivable to plausible."  *Id*. at 570.

To the contrary, the Complaint describes a perfectly legitimate contract dispute: the parties' agreement expressly prohibited carriage over the Internet, yet Sky Angel carried C-SPAN over the Internet.[7]  Sky Angel now alleges a conspiracy merely because it disagrees with C-SPAN's reasoning.  Sky Angel's dislike of C-SPAN's business decision does not convert that decision into an antitrust conspiracy, and C-SPAN cannot be hauled into court and dragged through discovery on the basis of Sky Angel's speculation that there must be a conspiracy hidden under there somewhere.

The allegation that C-SPAN's termination was some sort of antitrust conspiracy rather than a rational business decision constitutes a legal conclusion, not a valid factual allegation that the court must accept.  *See id.* at 564, 564 n.9.  Sky Angel has not even alleged that C-SPAN's Board of Directors actually considered or voted upon the question of terminating Sky Angel's

---

[7] The relevance of Sky Angel's use of the Internet to distribute C-SPAN's copyrighted programming cannot be overstated.  The fact that the FCC has solicited comment on this very same issue and found it to be both novel and complex belies any suggestion by Sky Angel that C-SPAN's termination on this basis was pretextual.

agreement—after all, normal-course business decisions do not require a board vote in most organizations—much less alleged when any such vote may have occurred, or any information about which directors voted in which way.  All that Sky Angel has done is summarize publicly available information about the composition of C-SPAN's Board, and then asked this Court to imagine that: (1) the Board was directly involved in this decision, (2) the cable company employees on the Board met to hatch a plan to harm Sky Angel competitively, (3) the Board members who are not employees of cable companies voted in favor of allowing Sky Angel to distribute C-SPAN over the Internet because it was a good idea, and (4) the Board members employed by cable companies nonetheless unanimously outvoted the other Board members out of anticompetitive animus.  But none of this is actually stated in, or plausible on the face of, Sky Angel's Complaint.

There is no basis for the Court to believe that this imagined conspiracy is a more plausible explanation for the contract termination than the simple contract dispute evidenced by the facts in the Complaint.  Under *Twombly* and its progeny, this case can go no further.

## III.  THE COMPLAINT FAILS TO PLEAD THE REQUIRED MARKET POWER ELEMENTS OF A MONOPOLY CLAIM

Sky Angel's Complaint lacks allegations that C-SPAN has met the elements required for liability under Section 2 of the Sherman Act.  It does not define the alleged relevant product market.  It does not provide any explanation of its alleged relevant geographic market.  It does not allege that C-SPAN possesses market power in any market—which it could not do anyway, since it does not plead a relevant product market.  These failures provide an independent, sufficient basis for dismissal of Count Two of the Complaint with prejudice.

## A.        Plaintiff Fails to Allege a Valid Product Market

It is unclear from the Complaint just what product market is allegedly at issue in this case, what other competitors are alleged to supply that product, and what other products are allegedly viewed by consumers as substitutes. This deficiency is fatal to the Plaintiff's claim, as an antitrust complaint may not simply assert a product market without further explanation; to avoid dismissal, it must define who the other sellers of that product are, and what other products are viewed as substitutes by consumers. "Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand . . .even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted." *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436-37 (3d Cir. 1997); *see also Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962); *Lady Deborah's, Inc. v. VT Griffin Servs., Inc.*, No. 207-079, 2007 U.S. Dist. LEXIS 95138, at *28-29 (S.D. Ga. Oct. 26, 2007) ("failure to allege facts regarding substitute products, to distinguish among comparable products or services, if any, or to aver other facts regarding the cross-elasticity of demand are grounds for dismissal. A plaintiff must explain why the market it alleges is in fact the relevant economically significant product market.") (internal quotations and citations omitted). The alleged relevant product market definition must include "all commodities reasonably interchangeable by consumers for the same purposes." *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956); *Bayer Schering Pharma AG v. Sandoz, Inc.*, 813 F. Supp. 2d 569, 575 (S.D.N.Y. 2011); *see also Campfield v. State Farm Mut. Auto. Ins.*, 532 F.3d 111, 118-19 (10th Cir. 2008) (dismissing a complaint where plaintiff improperly excluded certain participants from its alleged product market).

Sky Angel seems to argue that the relevant product market at issue in this case may be the market for multichannel video programming distribution as defined in the Communications Act—in other words, the market in which cable companies like Comcast and Time Warner Cable and satellite companies like DirecTV and DISH Network compete to sign up subscribers to their services. *See, e.g.,* Compl. ¶ 24 (arguing that Sky Angel qualifies as an MVPD under the Communications Act); Compl. ¶ 64 (arguing that "[t]he authorized majority of the Board of Directors of C-SPAN" possesses market power in the market for MVPD services). The Complaint states that MVPD services constitute a distinct relevant product market, and it says that the cable companies whose employees sit on the C-SPAN Board collectively have market power in that market, but it never actually alleges that the MVPD market is the relevant product market at issue *in this case against C-SPAN*. To the contrary, Sky Angel also explains that it provides its service over the Internet, Compl. ¶ 9, and then later argues that, because of its Internet distribution scheme, the FCC *does not* consider it an MVPD. Compl. ¶¶ 58 – 59.

If Sky Angel wishes to argue that the relevant product market at issue in this case is the MVPD market, then Plaintiff may not be included in that market by this Court—only the FCC can decide that question. The determination of whether Sky Angel is an MVPD falls within the FCC's exclusive jurisdiction, and that question is currently pending before the agency. *See supra* Section I.

Furthermore, the Defendant in this case is C-SPAN—a programming network. C-SPAN is not an MVPD, and does not compete in the MVPD market. The Complaint nowhere alleges that C-SPAN competes in the MVPD market, and as discussed further below, the Complaint nowhere alleges that C-SPAN possesses a sufficient share of any particular market at all, much less the MVPD market, to confer market power.

It is not at all clear, however, that Sky Angel has pleaded a relevant product market consisting only of MVPDs. The second sub-section of the "Market Definitions" section of the Complaint is titled "The Video Programming Market and MVPD-Affiliated Programming" and describes that "[t]he video program industry… includes: i) distributors of real-time, multichannel programming, ii) broadcast television stations, iii) distributors of recorded video programming… and, iv) on-line video distributors ('OVDs'), which stream video programming over the World Wide Web or cellular networks to computers or hand-held devices." Compl. ¶ 15. Is this the relevant product market in which Sky Angel asks this Court to adjudicate its claims? It is impossible to know, because the Complaint does not say.

If Sky Angel is trying to define the market as something broader than just MVPDs, it fails to plead what the boundaries of this market are alleged to be, who the other competitors are, what products are viewed by consumers as substitutes, and what role is played by other actors who would also be included under this expanded definition, such as Netflix and Hulu Plus. *See* FCC Pub. Notice ¶¶ 1, 8. Dismissal is therefore warranted. *See, e.g., Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1337 (11th Cir. 2010) ("Defining the relevant product market involves identifying producers that provide customers of a defendant firm (or firms) with alternative sources for the defendant's product or services.") (internal quotations and citations omitted).

In any case, the fact that Plaintiff's alleged product market is ambiguous—we do not know whether it includes just MVPDs, or something more—warrants dismissal of the claim. *See, e.g., Downeast Builders & Realty, Inc. v. Essex Homes Southeast, Inc.*, 2012 U.S. Dist. LEXIS 91764, at *8-12 (D.S.C. July 3, 2012) (dismissing for failure to sufficiently describe the contours of the markets at issue).

**B.       Plaintiff Fails to Allege a Valid Geographic Market**

Regardless of whether the relevant product market includes only MVPDs or something broader, Sky Angel has failed to sufficiently allege a relevant geographic market.  It is important to define the geographic area in which anticompetitive harm is alleged to have occurred because market power can be assessed only with respect to a particular set of competitors and competitive conditions, and different competitors compete in different places.  Absent information sufficient to perform this analysis, dismissal is warranted.  *See, e.g., Smugglers Notch Homeowners Ass'n, Inc. v. Smugglers' Notch Mgmt. Co., Ltd.*, 414 Fed. Appx. 372, 375 (2d Cir. 2011) (affirming dismissal for failure to adequately allege market); *Wampler v. SW Bell Tel. Co.,* 597 F.3d 741, 744-45 (5th Cir. 2010) (same).  The alleged geographic market must "both correspond to the commercial realities of the industry and be economically significant." *Brown Shoe Co.*, 370 U.S. at 336-37; *see also Apani SW, Inc. v. Coca-Cola Enter., Inc.*, 300 F.3d 620, 626, 629 (5th Cir. 2002) (dismissing antitrust claim because the geographic market was legally insufficient as a matter of law and noting that "the geographic market in some instances may encompass the entire Nation, under other circumstances it may be as small as a single metropolitan area").

A complaint must do more than state a geographic market; it must make allegations to support that market.  *See Uretek USA, Inc. v. Applied Polymerics, Inc.*, 2011 U.S. Dist. LEXIS 139349, at *14 (E.D. Va. Dec. 5, 2011) (dismissing plaintiff's antitrust claims because the alleged geographic market of the United States was too broad and unsupported by factual allegations); *Synthes, Inc. v. Emerge Med., Inc.* 2012 U.S. Dist. LEXIS 140251, at *22-23 (E.D. Pa. Sept. 28, 2012) (dismissing case for failure to allege a valid geographic market where the complaint provided "mere delineation" of the United States as the geographic market "without

reference to a market as perceived by consumers and suppliers[.]").  Sky Angel has failed to include any allegations that support its alleged geographic market.  Rather, the Complaint simply states that "[t]he markets affected by defendant's conduct are national in scope" and "[t]he 50 states of the United States and its districts and territories comprise the relevant geographic market for MVPD services."  Compl. ¶¶ 14, 23.

A review of the Complaint reveals that the only conceivable logic behind Sky Angel's determination is that it provides its service throughout the United States, *see* Compl. ¶ 9, or that C-SPAN's programming is carried "throughout the United States[,]" Compl. ¶ 13.  As an initial matter, it is irrelevant that either Sky Angel or C-SPAN does business in markets across the country if the relevant product market at issue is the MVPD market—in that case, the question is which MVPDs are alleged to have harmed Sky Angel, and in what geographic areas do they compete with Sky Angel.  The focus of the relevant geographic market inquiry is on where consumers will turn for alternatives, not where a particular party provides its service or sells its products.  *Dicar, Inc. v. Stafford Corrugated Prods.*, 2010 U.S. Dist. LEXIS 23677, at *31-32 (D.N.J. 2010) (dismissing counterclaims based on geographic market allegation focused on where plaintiff conducted its business instead of where consumers could turn for substitutes).

In asserting the U.S. as the geographic market, the Complaint ignores the fact that consumers face different choices for MVPD services depending on their geographic location within the United States.  Both the FCC and the Antitrust Division of the U.S. Department of Justice ("DOJ") have previously determined that the proper geographic market for MVPDs is local.  As the FCC explained, "the relevant geographic market for MVPD services is local because consumers make decisions based on the MVPD choices available to them at their residences and are unlikely to change residences to avoid a small but significant increase in the

price of MVPD services." *In the Matter of Adelphia Commc'ns & Time Warner Cable,*
Memorandum Opinion and Order, 21 FCC Rcd 8203, ¶ 64 (2006).  Similarly, the DOJ has
explained that consumers simply cannot purchase programming from a distributor that does not
have the capabilities to reach their homes.  *United States v. Comcast Corp., et al.,* Competitive
Impact Statement, Dkt. No. 1:11-cv-00106, at 13 (D.D.C., filed Jan. 18, 2011); *see also In re Set-
Top Cable TV Box Antitrust Litig.*, 2011 U.S. Dist. LEXIS 39001, at *26 (S.D.N.Y. Apr. 8,
2011) (holding that the geographic market for MVPD services was local because "a consumer's
options for Premium Cable Services will necessarily be determined by local market
conditions.").  Because Sky Angel has neglected to allege any explanation as to why the United
States should be the geographic market, and ignores the commercial realities of the choices
consumers face, its geographic market allegation fails as a matter of law.

### C.      Plaintiff Fails to Allege that C-SPAN has Market Power

The Complaint in this case is fatally flawed because it does not allege that C-SPAN
possesses market power in any market—an indispensable element of its Sherman Act Section 2
claim.  That claim must therefore be dismissed.

In order to pursue its Section 2 monopoly maintenance claim against C-SPAN, Sky
Angel must plead that C-SPAN possesses market power—the power to raise prices above a
competitive level without fear of being undercut by competition—over a particular product in a
particular geographic area.  It must then plead that C-SPAN did something anticompetitive in
order to maintain that market power and shut Sky Angel out of the market.  *See, e.g., Southern
Pac. Commc'ns Co. v. Am. Tel. & Tel. Co.*, 740 F.2d 980, 1000 (D.C. Cir. 1984) (citing *United
States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966)).  Because market power can be analyzed
only in the context of a properly defined product market and a properly defined geographic

market, the failure to plead either a geographic or a product market renders the market power

inquiry impossible.  *See, e.g., Smugglers Notch Homeowners Ass'n, Inc.*, 414 Fed. Appx. at 375

(affirming dismissal for failure to adequately allege a relevant market in which market power

could be assessed); *Wampler,* 597 F.3d at 744-45 (same).

      The only market power at issue in this case is the alleged market power of the single

defendant, C-SPAN.  Sky Angel may not aggregate the shares of multiple other entities—such as

the cable companies whose employees allegedly constitute "an authorized majority of the Board

of Directors of C-SPAN"—in an attempt to cobble market power.  *Allen v. Dairy Farmers of*

*Am., Inc.,* 748 F. Supp. 2d 323, 341-42 (D. Vt. 2010) (citing *H.L. Hayden Co. of N.Y., Inc. v.*

*Siemens Med. Sys.*, 879 F.2d 1005, 1018 (2d Cir. 1989) (stating that the Second Circuit has

rejected Section 2 claims based on "shared monopoly" and holding that "the district court

correctly concluded that the market shares of [defendants] could not be aggregated to establish

an attempt to monopolize in violation of Sherman Act [Section 2].")); *RxUSA Wholesale, Inc. v.*

*Alcon Labs., Inc.,* 661 F. Supp. 2d 218, 235 (E.D.N.Y. 2009) (dismissing a Section 2 claim

where plaintiff aggregated defendants' market shares to determine their supposed market power

and stating that "[t]he Second Circuit has specifically rejected monopolization claims under

Section 2 based on a shared monopoly theory of liability.").  The Complaint nowhere alleges that

C-SPAN possesses market power in any market.[8]  Plaintiff's only allegation pertaining to market

power is that the cable companies whose employees sit on C-SPAN's Board of Directors

cumulatively have market power.  This alone is insufficient.  *Allen,* 748 F. Supp. 2d at 341-42

(plaintiffs cannot aggregate market shares to find market power); *see also supra* Section II.A.i.

---

[8] Sky Angel's allegation that it requires C-SPAN's programming in order to "effectively
compete" does not suffice as an allegation of market power.  Compl. ¶¶ 50, 61.  The fact that Sky
Angel believes that it could compete better with C-SPAN's programming does not mean that
C-SPAN has market power.

Regardless of whether Plaintiff alleges that the product market is MVPD services or something broader, and even if Sky Angel is presumed to compete in the MVPD market, C-SPAN does not, and Sky Angel does not allege that C-SPAN competes in the MVPD market. C-SPAN is a programmer, *see* Compl. ¶ 11, and does not compete in the MVPD market. *See, e.g., C-SPAN et al. v. FCC,* 545 F.3d 1051, 1054 (D.C. Cir. 2008) (discussing the different interests of C-SPAN and other program networks when compared to those of cable operators/MVPDs). Since C-SPAN does not compete in the MVPD market, it cannot have market power in that market. The only relevant market in which C-SPAN could in theory possess market power is in a programming market—but Sky Angel does not plead that the relevant product market in this case is a programming market, and there is no allegation in the Complaint that C-SPAN has market power in a programming market.

## IV.    PLAINTIFF FAILS TO PLEAD ANTITRUST INJURY

Sky Angel has not pleaded an injury of the type for which the antitrust laws provide a remedy. This failure provides a third independent and sufficient basis for dismissal of the entire Complaint with prejudice.

A complaint's failure to adequately plead injury is both an issue of subject matter jurisdiction warranting dismissal under Rule 12(b)(1) and a failure to state a claim warranting dismissal under Rule 12(b)(6). In *Cheeks of N. Am., Inc.*, the court dismissed a plaintiff's Section 1 claims for lack of subject matter jurisdiction because plaintiff failed to demonstrate injury, and therefore lacked standing. 807 F. Supp. 2d at 94. Other decisions have explained that "[a]lthough properly treated as a threshold matter, antitrust standing is nonetheless an affirmative element of any antitrust suit brought by a private plaintiff and is assessed on a motion to dismiss according to the Rule 12(b)(6) standard, not that of Rule 12(b)(1) applicable to

challenges to constitutional standing." *Sprint Nextel Corp. v. AT&T Inc.*, 821 F. Supp. 2d 308,

312 n.1 (D.D.C. 2011) (dismissing in part antitrust claims for failure to allege antitrust injury).

Regardless of whether addressed as a 12(b)(1) matter or a 12(b)(6) matter, Plaintiff's Complaint

must be dismissed for failure to allege a cognizable antitrust injury.

   Antitrust injury is "injury of the type the antitrust laws were intended to prevent and that

flows from that which makes defendants' acts unlawful.  The injury should reflect the

anticompetitive effect either of the violation or of anticompetitive acts made possible by the

violation." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).  To

establish injury, a plaintiff must show: "(1) that he or she suffered an injury in fact that is (a)

concrete and particularized and (b) actual or imminent; (2) a causal relationship between the

injury and the challenged conduct; and (3) that the injury will likely be remedied by a favorable

court decision." *Cheeks of N. Am., Inc.,* 807 F. Supp. 2d at 92 (citing *Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 560-61(1992)).  Antitrust injuries must be both causally related to an

antitrust violation and attributable to an anticompetitive practice.  *Sprint Nextel Corp.*, 821 F.

Supp. 2d at 313 (citing *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990))

("even if a threatened injury is causally related to an antitrust violation, it will not qualify as

antitrust injury unless it is attributable to an anticompetitive aspect of the practice under

scrutiny.") (internal quotations omitted).

   The fact that a plaintiff may be in a worse position than if the complained-of conduct had

not occurred, or that it has lost sales or customers, does not suffice to demonstrate an antitrust

injury.  *Walgreen Co. v. AstraZeneca Pharm. L.P.*, 534 F. Supp. 2d 146, 150 (D.D.C. 2008)

(granting motion to dismiss for failure to identify an antitrust injury despite plaintiff's allegations

of lost profits, because plaintiff was still able to compete) (citing *Pueblo Bowl-O-Mat, Inc.*, 429

U.S. at 489).  Rather, antitrust injury serves as a limitation on claims to ensure that a plaintiff can recover only if its losses result directly from "a competition-*reducing* aspect or effect of the defendant's behavior."  *Id.* (quoting *Atl. Richfield Co.*, 495 U.S. at 344) (internal quotations omitted).  The antitrust laws were enacted to protect competition, not competitors.  *Brown Shoe Co.*, 370 U.S. at 320.  Sky Angel has not alleged any injury to competition sufficient to constitute antitrust injury.

### A.      Plaintiff's Disappointment is the Result of Its Own Contract Breach

C-SPAN's decision to stop Sky Angel's carriage of its networks over the Internet was a business decision resulting from the discovery of Sky Angel's contract violation.  Sky Angel admits that it was informed by C-SPAN that its use of the Internet to deliver C-SPAN programming was in direct violation of the parties' agreement.  Compl. ¶ 33 (citing an e-mail from C-SPAN stating that "Our recently executed IPTV agreement does not allow for the type of delivery Sky Angel offers."); Compl. Ex. F (Letter from Sky Angel acknowledging C-SPAN's problem with Plaintiff's delivery method).  Plaintiff signed an Affiliation Agreement with C-SPAN stating, in relevant part, that:

> Network hereby grants to Affiliate the non-exclusive right, and Affiliate hereby accepts said right as well as the obligation throughout the Term hereof to exhibit, distribute and authorize the reception of the Services to end users as provided herein by means of an internet-protocol based stream which shall be secure and capable of being accessed only in a manner which would not allow any form of subsequent distribution other than as set forth herein**, including without limitation, distribution over the public internet**.

Compl. Ex. E (emphasis added).  Sky Angel was expressly barred by the agreement from distributing C-SPAN over the Internet.  Accordingly, absent facts that have not been pleaded here, C-SPAN's termination of its contract with Plaintiff can be the result of no more than Sky Angel's breach of contract.  *Pac. Bell Tel. Co.*, 129 S. Ct. at 1118 ("As a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and

conditions of that dealing."); *Trinko*, 540 U.S. at 408.[9]  Plaintiff provides no plausible reason to believe that its loss of C-SPAN constitutes an antitrust injury as opposed to the simple functioning of the marketplace.

> **B.    Plaintiff's Alleged Injury is Speculative and Not the Type of Injury that the Antitrust Laws Seek to Prevent**

C-SPAN discovered Sky Angel's breach and terminated its agreement with Sky Angel within three days of Sky Angel's first airing of the networks.  Sky Angel has provided no basis to believe that competition or consumers were harmed by its loss of this programming after only three days of carriage.  Plaintiff's allegations about an unspecified number of consumer complaints and its purported reputational injury are not the type of injuries that the antitrust laws were designed to prevent.  *See Conn. Ironworkers Emplrs. Assoc. v. New Eng. Reg'l Council of Carpenters*, 2012 U.S. Dist. LEXIS 37523, at *38-39 (D. Conn. Mar. 20, 2012) (citing *George Haug Co. v. Rolls Royce Motor Cars, Inc.*, 148 F.3d 136, 139 (2d Cir. 1998)) ("Mere injury or the possibility of injury is not enough to confer standing…The antitrust injury requirement obligates a plaintiff to demonstrate…that the challenged action has had an actual adverse effect on competition as a whole in the relevant market; to prove it has been harmed as an individual competitor will not suffice.").

Tellingly, paragraph 50 of the Complaint attempts to import the language of Section 628 of the Communications Act in order to transmogrify its program access claim into an antitrust allegation: it alleges that Sky Angel's loss of "C-SPAN's highly valued, one-of-a-kind programming" hobbled its ability to compete in the MVPD market.  But that is not the type of harm that the antitrust laws were enacted to resolve—it is the type of harm that Section 628 of

---

[9] Because this case involves the breach of a contract, the "prior course of dealing" exception to a business's right to unilaterally refuse to deal discussed in *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985) does not apply.  Even if it did, three days of carriage would hardly qualify as an economically meaningful prior course of dealing.

the Communications Act was enacted to resolve.  *See* 47 U.S.C. § 548(b) (prohibiting

discrimination or unfair acts or practices the purpose or effect of which is to hinder significantly

or prevent any MVPD from competing); *Implementation of Section 628 of the Cable Television*

*Consumer Protection and Competition Act of 1992*, Report and Order, 13 FCC Rcd 15822,

15823 ¶ 2 (1998) ("Section 628 is intended to increase competition and diversity in the

multichannel video programming market, as well as to foster the development of competition to

traditional cable systems…").

      Additionally, Plaintiff alleges that C-SPAN's termination after only three days on the air

lead to lost profits, business opportunity, and the ability to effectively compete.  Compl. ¶ 53.

These allegations, however, are both insufficient and undermined by Plaintiff's more detailed

account of what happened.  *Jacobs*, 626 F.3d at 1338 (explaining that a plaintiff claiming injury

must point to "specific damage done to consumers in the market") (internal citations and

quotations omitted).  Plaintiff states that it "publicized to its subscriber base and to the public at

large that it would be adding C-SPAN's programming to its line-up in the near future."  Compl. ¶

54.  Noticeably absent from Plaintiff's Complaint, however, are any allegations that as a result of

this publication Plaintiff witnessed an increase in its subscriber base or that, following its

discontinuation of C-SPAN after only three days of carriage, even a single consumer

discontinued service.  *See id.* (noting only that "subscribers were foreseeably confused" and that

"[m]any of them wrote to inquire, complain, or request that C-SPAN's programming be

restored.").[10]  Sky Angel competed in the market before the incident, and it continues to compete

---

[10] It is worth noting that, based on Plaintiff's extremely limited offerings listed in Exhibit A to its
Complaint, there are many other channels carried by other MVPDs that Plaintiff does not carry,
and the loss of C-SPAN after only three days is highly unlikely to have had any competitive
effect at all on Sky Angel.

in the market following the alleged injury.  While Plaintiff may prefer to carry C-SPAN, it has

failed to allege a cognizable injury in fact or any antitrust injury.

## CONCLUSION

Plaintiff's Complaint should be dismissed with prejudice.


Respectfully Submitted,

/s/ Robert G. Kidwell
Bruce D. Sokler (DC Bar #205278)
Robert G. Kidwell (DC Bar #468084)
Mintz Levin Cohn Ferris Glovsky and Popeo, P.C.
701 Pennsylvania Avenue NW, Suite 900
Washington, DC 20004
Telephone: (202) 661-8752
Facsimile: (202) 434-7400
Email: RGKidwell@mintz.com
           BDSokler@mintz.com

Bruce D. Collins
Corporate VP & General Counsel
C-SPAN
400 North Capitol St., NW
Suite 650
Washington, DC 20001

*Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Motion to Dismiss and Memorandum of Law in Support was served, via this Court's CM/ECF system, this 14th day of January, 2013 on opposing counsel as follows:

Jonathan L. Rubin (DC Bar #353391)
Rubin PLLC
1250 24th Street, N.W., Ste. 300
Washington, D.C. 20037
Telephone:  (202) 776-7763
Facsimile:  (877) 247-8586
Email:  jr@rubinpllc.com

*Counsel for Plaintiff*

/s/ Robert G. Kidwell

33