UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| SKY ANGEL U.S., LLC, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 12-1834 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 19, 20 |
| | : | | |
| NATIONAL CABLE SATELLITE CORPORATION, *doing business as C-SPAN*, *et al.*, | : : : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

GRANTING DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT; AND
DENYING PLAINTIFF'S SECOND MOTION FOR LEAVE TO CONDUCT DISCOVERY

**I. INTRODUCTION**

This antitrust conspiracy case comes before the Court once again on two pending motions. The plaintiff alleges that the defendants, a non-profit corporation and ten of its board members, conspired to boycott the plaintiff in violation of federal antitrust laws by terminating an affiliation agreement between the corporation and the plaintiff. The defendants move to dismiss the amended complaint for failure to state a claim, and the plaintiff moves for leave to conduct early discovery to ascertain the identities of the board member defendants, currently joined to the case as Does. Both motions present issues familiar to the Court, as the Court in this case has already granted a motion to dismiss the plaintiff's initial antitrust complaint and denied a motion to allow the plaintiff to conduct discovery to "identify" board members and their activities. Because the amended complaint fails to rectify the deficiencies identified in the Court's earlier opinion, the Court will grant the motion to dismiss the amended complaint.

Because identification of the Does would be futile, as the amended complaint does not sufficiently state a claim against them, the Court will deny the discovery motion.

## II. BACKGROUND

The facts alleged in this case are set forth in more detail in an earlier opinion. *See generally Sky Angel U.S., LLC v. Nat'l Cable Satellite Corp.* (*Sky Angel I*), 947 F. Supp. 2d 88, 94–96 (D.D.C. 2013) (ECF No. 10). Plaintiff Sky Angel U.S., LLC ("Sky Angel") is the operator of FAVE-TV—a subscription service that distributes the content of television networks in real time. *See* Am. Compl. ¶ 6, ECF No. 18. FAVE-TV carries the video content over a closed and encrypted fiber-optic transmission path to a central location, then distributes the programming from the central location to television-connected set-top boxes over high-speed internet connections. *See id.* ¶ 7. Defendant National Cable Satellite Corporation, doing business as C-SPAN ("C-SPAN"), is a non-profit corporation that distributes video of legislative proceedings and related programming via its three networks—C-SPAN, C-SPAN2, and C-SPAN3. *See id.* ¶¶ 8–9. C-SPAN was created by the cable television industry, and its board of directors is comprised of high-ranking executives from some of the nation's largest multichannel video programming distributors ("MVPDs"). *See id.* ¶¶ 10–11.

In 2009, Sky Angel and C-SPAN executed an affiliation agreement (the "IPTV Agreement"), under which C-SPAN granted to Sky Angel a non-exclusive right to carry the C-SPAN and C-SPAN2 networks "by means of an internet-protocol based stream which shall be secure and capable of being accessed only in a manner which would not allow any form of subsequent distribution . . . , including without limitation, distribution over public Internet." IPTV Agreement § 1(a), ECF No. 18-2. The networks began airing on FAVE-TV on or about July 10, 2009. *See* Am. Compl. ¶ 24. But only days later, Peter Kiley of C-SPAN pulled the

plug on FAVE-TV, asking Sky Angel to remove the C-SPAN networks from its lineup "pending [C-SPAN's] review of [Sky Angel's] distribution technology and a precise legal framework." *See id.* The networks have not been reintroduced to the FAVE-TV lineup.

On November 13, 2012, Sky Angel filed a complaint against C-SPAN asserting two claims under the Sherman Antitrust Act, ch. 647, 26 Stat. 209 (1890) (codified as amended at 15 U.S.C. §§ 1–7 (2012)) (the "Sherman Act"). *See generally* Compl., ECF No. 1. C-SPAN promptly moved to dismiss the complaint for lack of subject matter jurisdiction, lack of standing, and failure to state a claim. *See generally* Mot. Dismiss, ECF No. 5. The Court granted C-SPAN's motion on the latter ground, finding that (1) Sky Angel's section 1 conspiracy claim failed to plead facts indicating that C-SPAN's MVPD board members acted in concert to boycott Sky Angel; and (2) Sky Angel's section 2 monopoly claim failed to plead either a relevant market or C-SPAN's market power. *See Sky Angel I*, 947 F. Supp. 2d at 99–105.[1] Before filing its amended complaint, Sky Angel requested leave to take early discovery in order to "identify" the actors involved in the alleged section 1 conspiracy. *See generally* Pl.'s 1st Mot. Disc., ECF No. 11. The Court denied the request, finding that Sky Angel was not seeking discovery on just the identities of the alleged actors, but was instead fishing for information on the means by which C-SPAN terminated the IPTV Agreement. *See generally Sky Angel U.S., LLC v. Nat'l Cable Satellite Corp.* (*Sky Angel II*), 296 F.R.D. 1 (D.D.C. 2013) (ECF No. 17).

After the Court denied the request for early discovery, Sky Angel filed an amended complaint that reasserts only the section 1 conspiracy claim against C-SPAN but adds ten unnamed C-SPAN board members as Does. *See generally* Am. Compl. Sky Angel then filed a second motion for early discovery, requesting leave to propound two interrogatories that seek the

---

[1] The Court, however, found that it did have subject matter jurisdiction over the dispute and that Sky Angel had standing. *See Sky Angel I*, 947 F. Supp. 2d at 97–99, 105–07.

3

identities of the C-SPAN board members, if any, who (1) authorized or ratified the termination of the IPTV Agreement; or (2) delegated authority to an agent, which authority included the power to terminate the IPTV Agreement. *See generally* Pl.'s 2d Mot. Disc., ECF No. 19. C-SPAN opposes Sky Angel's second request for leave to conduct early discovery, and has also filed a motion to dismiss the amended complaint for failure to cure the pleading defects identified in the Court's first opinion. *See generally* C-SPAN's Mot. Dismiss Am. Compl., ECF No. 20; C-SPAN's Opp'n 2d Mot. Disc., ECF No. 21. Both motions are currently pending before the Court.

### III. C-SPAN'S MOTION TO DISMISS

#### A. Legal Standard

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A court considering such a motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000). It is not necessary for the plaintiff to plead all elements of her prima facie case in the complaint. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–14 (2002); *Bryant v. Pepco*, 730 F. Supp. 2d 25, 28–29 (D.D.C. 2010).

Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of the legal conclusions that are couched as factual allegations. *See Twombly*, 550 U.S. at 555.

### B. Analysis

Sky Angel's amended complaint alleges that C-SPAN and the Does conspired to boycott Sky Angel by terminating the IPTV Agreement in violation of section 1 of the Sherman Act. *See* Am. Compl. ¶¶ 48–51, ECF No. 18. Section 1 provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1 (2012). Thus, to state a claim under section 1,[2] a plaintiff must allege "(1) that defendants entered into some agreement for concerted activity (2) that either did or was intended to unreasonably restrict trade in the relevant market, which (3) affects interstate commerce." *Asa Accugrade, Inc. v. Am. Numismatic Ass'n*, 370 F. Supp. 2d 213, 215 (D.D.C. 2005) (citing *Dial A Car, Inc. v. Transp., Inc.*, 884 F. Supp. 584, 591 (D.D.C. 1995), *aff'd*, 82 F.3d 484 (D.C. Cir. 1996)).

The Court dismissed Sky Angel's original section 1 claim because, even if C-SPAN may be capable of engaging in an intracorporate conspiracy, Sky Angel failed to plead facts that

---

[2] Section 4 of the Clayton Antitrust Act of 1914, 15 U.S.C. § 15 (2012), creates a private, civil right of action for violations of section 1 of the Sherman Act.

5

plausibly suggest that an agreement existed between C-SPAN's MVPD board members. *See Sky Angel I*, 947 F. Supp. 2d 88, 100–02 (D.D.C. 2013) (ECF No. 10). C-SPAN moves for dismissal of Sky Angel's amended complaint on the grounds that (1) C-SPAN is a single corporation incapable of conspiring within itself; (2) Sky Angel again failed to plead facts plausibly suggesting that an agreement actually existed between C-SPAN's board members; and (3) Sky Angel's claim must be analyzed according to the rule of reason, under which Sky Angel is required, but has failed, to plead both a relevant market and C-SPAN's power over that market. *See* C-SPAN's Mot. Dismiss Am. Compl. 6–13, ECF No. 20.[3] Because Sky Angel failed to rectify the deficient factual allegations of its original complaint, the Court will dismiss the amended complaint.

1. Intracorporate Conspiracy

Section 1 of the Sherman Act "does not reach conduct that is 'wholly unilateral.'" *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768 (1984) (quoting *Albrecht v. Herald Co.*, 390 U.S. 145, 149 (1968)). However, "the concerted action analysis 'does not turn simply on whether the parties involved are legally distinct entities.'" *Sky Angel I*, 947 F. Supp. 2d at 100 (quoting *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 191 (2010)). Instead, the Supreme Court has "eschewed such formalistic distinctions in favor of a functional consideration of how the parties involved in the alleged anticompetitive conduct actually operate." *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 191 (2010). Earlier in this

---

[3] C-SPAN's motion also contains a boilerplate reincorporation of its earlier argument that the Court lacks subject matter jurisdiction due to a program access dispute between Sky Angel and Discovery Communications currently pending before the Federal Communications Commission. *See* C-SPAN's Mot. Dismiss Am. Compl. 13. Because C-SPAN raises no new arguments in its motion, the Court simply directs the parties to the discussion of subject matter jurisdiction contained in the Court's first Memorandum Opinion. *See Sky Angel I*, 947 F. Supp. 2d at 97–99 (concluding that the Court has subject matter jurisdiction over this case).

case, the Court found that C-SPAN *may* be capable of engaging in an intracorporate conspiracy under section 1 where its board members act on the interests of the MVPDs, separately from those of C-SPAN itself. *See Sky Angel I*, 947 F. Supp. 2d at 100–01. However, not *every* action taken by C-SPAN constitutes concerted action under the Sherman Act: "[M]erely pleading that multiple entities hold positions on a board of directors does not establish a horizontal agreement for purposes of section 1." *Id.* at 102.

In its motion to dismiss Sky Angel's amended complaint, C-SPAN seeks to further distinguish the *American Needle* case on the ground that it involved an unincorporated entity, while the entities in *Copperweld*, where the Court refused to find a conspiracy, were corporations. *See* C-SPAN's Mot. Dismiss Am. Compl. 12–13. But *Copperweld*, as well as *González-Maldonado v. MMM Healthcare, Inc.*, 693 F.3d 244 (1st Cir. 2012), both relied upon by C-SPAN, did not turn solely on the fact that the defendants were formally incorporated entities; those decisions were based on the fact that the relevant actors were parents and their wholly-owned subsidiaries and therefore always had "a complete unity of interest." *See Copperweld*, 467 U.S. at 771; *see also González-Maldonado*, 693 F.3d at 249–50. The test thus remains a functional one—that is, whether those within the single entity "act[ed] on interests separate from those of the firm itself," *Am. Needle*, 560 U.S. at 200, and therefore "deprive[d] the marketplace of independent centers of decisionmaking that competition assumes and demands." *Copperweld*, 467 U.S. at 769.

However, C-SPAN's briefing raises an interesting question: In the context of an incorporated entity, does board member action taken upon separate interests *necessarily* give rise to a breach of fiduciary duty, and in such a case is C-SPAN is not the proper defendant? The parties have not adequately briefed the issue, and, as set forth below, Sky Angel's complaint

remains deficient for other reasons. Accordingly, the Court assumes without deciding that antitrust law and fiduciary duty principles do not perfectly align in such a fashion, and therefore the Court does not revisit its earlier holding at this time.

2. Factual Context

To state a claim for a violation of section 1 of the Sherman Act, Sky Angel must plead a factual context sufficient to support a plausible inference that an agreement among C-SPAN and the Does did, in fact, exist. "Because § 1 of the Sherman Act does not prohibit [all] unreasonable restraints of trade . . . but only restraints effected by a contract, combination, or conspiracy, [t]he crucial question is whether the challenged anticompetitive conduct stem[s] from independent decision or from an agreement, tacit or express." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553 (2007) (alterations in original) (citations omitted) (internal quotation marks omitted). Thus, at the pleadings stage, "stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made." *Id.* at 556. The Court dismissed Sky Angel's original section 1 claim because it relied upon the legal fiction of agency law to impute the actions of a single individual—Peter Kiley, who asked Sky Angel to remove the C-SPAN networks from the FAVE-TV lineup—onto the entire board. *See Sky Angel I*, 947 F. Supp. 2d at 101–02. Thus, Sky Angel's initial complaint did not plead the actual existence of an agreement between the board members themselves. "'Concerted action' between multiple persons remains a *fact* that must be pleaded." *Id.* at 101.

But Sky Angel's amended pleading adds more conclusions, not more facts. In its new complaint, Sky Angel attempts to weave around the Court's earlier ruling by tacking several

Does onto the case and adding a conclusory allegation that the Does "authorized or ratified"[4] C-SPAN's alleged boycott of Sky Angel. *See* Am. Compl. ¶¶ 11, 32–33, 37. Sky Angel also pleads, in a similarly conclusory fashion, that the Does "acted in concert" to terminate the IPTV Agreement. *See id.* ¶¶ 36, 48. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The "conclusory nature" of a plaintiff's allegations "disentitles them to the presumption of truth." *Id.* at 681. Sky Angel pleads no specific facts to support its conclusory allegations of concerted activity.

Although the conclusory allegations are not entitled to a presumption of truth, Sky Angel asserts that an inference of concerted activity is plausible because the institutional setting enhances the opportunity for concerted activity, C-SPAN had no legitimate reason for terminating the contract so abruptly, and the termination resulted in a sacrifice of C-SPAN profits. *See* Pl.'s Opp'n Mot. Dismiss Am. Compl. 12–13, ECF No. 22.[5] Setting aside the fact that these proffered justifications also existed when the Court dismissed the initial complaint, they do not provide a plausible basis from which to infer that the board was involved in the termination of the contract for some nefarious purpose. Rather, according to Sky Angel's own

---

[4] This conclusory assertion, as well as the proposed interrogatories at issue in the pending discovery motion, signal that Sky Angel is, at bottom, still relying on an agency theory for its section 1 claim. *See* Pl.'s Proposed Interrog. No. 2, ECF No. 19-2 ("[I]dentify any and all members of [the board] who authorized or ratified a delegation of authority to any other person, which authority included discontinuing Sky Angel's distribution of [the C-SPAN networks].").

[5] Sky Angel also argues that general statements made by cable executives about "protecting the ecosystem" by contractually prohibiting online distribution of content enhances plausibility. *See* Pl.'s Opp'n Mot. Dismiss Am. Compl. 13. Because these allegations are not contained in the complaint—nor does the complaint even identify the individual speakers as C-SPAN board members—the Court does not consider them. Moreover, the statements would not be relevant, because Sky Angel alleges that the antitrust conduct was the *termination* of the IPTV Agreement, not the inclusion of a contractual prohibition limiting the authorized method of distribution (which Sky Angel seems to allege it did not breach, *see infra* note 6).

9

allegations, C-SPAN's agent, Mr. Kiley, communicated his belief that the IPTV Agreement "does not allow for the type of delivery Sky Angel offers." Am. Compl. ¶ 24. Sky Angel pleads no *facts* to suggest that the board had any involvement in the formation of that belief.[6]

The Court will therefore dismiss the amended complaint for failure to plead sufficient facts to create a plausible inference of concerted activity. Because the Court's reasoning applies to the entire claim, and not only Sky Angel's claim against C-SPAN, the Court will dismiss the complaint as to all Defendants.[7]

## IV. SKY ANGEL'S SECOND MOTION FOR LEAVE TO CONDUCT DISCOVERY

Sky Angel also seeks leave to propound two interrogatories in order to "identify" the Does named in its amended complaint. *See generally* Pl.'s 2d Mot. Disc., ECF No. 19. As a general rule, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized by the[] rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1). As the Court explained in rejecting Sky Angel's first motion for leave to conduct early discovery, "courts tend to find good cause [to grant leave] at this early stage only in narrow circumstances, such as where a party seeks information related to the issues

---

[6] While Sky Angel seemingly disputes whether it breached the IPTV Agreement, *see* Am. Compl. ¶ 7 ("Sky Angel's distribution system does not allow for 'public' internet access."); *id.* ¶ 28 (alleging that termination of the agreement "had no legitimate or lawful purpose"), the relevant inquiry is whether it is plausible that Mr. Kiley's asserted basis for terminating the contract was pretextual. Sky Angel's own description of its distribution method "over high-speed internet connections to set-top boxes[,]" *id.*, suggests that C-SPAN did believe that Sky Angel's distribution method was not authorized, as does Sky Angel's decision not to assert a breach of contract claim.

[7] Because the Court dismisses Sky Angel's amended complaint for failure to plead facts that plausibly suggest the existence of an agreement, the Court need not decide whether a properly pleaded claim would withstand the rule of reason. In light of the parties' rather conclusory briefing on the thorny threshold issue of whether Sky Angel's claim should be analyzed under the rule of reason, instead of a *per se* rule, the Court finds it inappropriate to proceed with that analysis at this juncture.

of identity, jurisdiction, or venue." *Sky Angel II*, 296 F.R.D. 1 (D.D.C. 2013) (ECF No. 17). As the Court also pointed out in its prior opinion on the subject, courts tend to grant early discovery under the "identity" exception only to ascertain "the identity of individuals who committed conduct already identified and alleged in an operative complaint." *Id.* (citation omitted) (citing *Nu Image, Inc. v. Does 1–23,322*, 799 F. Supp. 2d 34 (D.D.C. 2011)). Because the Court dismisses Sky Angel's amended complaint for failure to state a claim against any defendant, *see supra* Part III, the exception does not apply, and identification of the Does would be futile.[8] The Court will therefore deny Sky Angel's motion.

## V. CONCLUSION

For the foregoing reasons, the Court will dismiss the complaint as to all Defendants and deny Sky Angel's second request for early discovery. In this case, the Court has now disposed of four separate motions, via three written opinions, before Sky Angel has even survived a Rule 12(b)(6) motion. Nonetheless, the Court will give Sky Angel one more opportunity to amend its complaint within 30 days. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: March 28, 2014            RUDOLPH CONTRERAS
                                                                              United States District Judge

---

[8] Sky Angel, for a second time, couches its proposed discovery requests as seeking only the "identity" of particular defendants, even though the identities of C-SPAN's directors are publicly available. Moreover, the nature of Sky Angel's proposed interrogatories again raises suspicion that Sky Angel is in fact seeking confirmation of its conclusory conspiracy allegations. This case is not like common copyright cases in which a plaintiff sues Does linked to specific IP addresses alleged to have downloaded copyrighted material, and then seeks only to identify the individuals who use those IP addresses. Rather, Sky Angel seeks to have C-SPAN confirm, by "identifying" Does, that a majority of C-SPAN board members authorized *or* ratified the termination of the IPTV Agreement *or* delegated to someone else authority that included the power to terminate the IPTV Agreement. *See* Pl.'s Proposed Interrog. Nos. 1–2, ECF No. 19-2.